And we'll hear argument next in Brown v. Lynch. Ms. Friedman. Good morning, may it please the Court. Allison Friedman for the petitioner ACM Brown. This Court has jurisdiction to review constitutional claims and questions of law. Mr. Brown presents three such questions here today. First, the immigration judge and BIA applied an erroneous legal standard to determine that Mr. Brown was ineligible for cow protection. Second, the immigration judge violated Mr. Brown's right to a fair hearing. And finally, the agency unambiguously mischaracterized the record. Given these errors, we cannot have confidence in the agency's decision below and this Court should remand for further proceedings. With regard to the erroneous legal standard argument, the immigration judge required Mr. Brown to demonstrate that he would be singled out for torture when in fact he could show either that he would be singled out for torture or that those in his particularly alleged circumstances would more likely than not be tortured if returned to Jamaica. Now, this difference is not merely a semantic one. For example, a political leader or someone who's on a government watch list may be able to easily demonstrate that they would be singled out for torture. However, other individuals such as members of a social group or ethnic group, for example, in this case gay Jamaican men, would have a more difficult time proving that they could be singled out for torture, but instead may be able to show that those who are similarly situated to them would be tortured if returned to Jamaica. And that's exactly what Mr. Brown did here. He put forth evidence, the country conditions evidence, the 2013 State Department report, among other things, which demonstrates that gay Jamaican men are often stoned, beaten, raped, shot, and even killed. And this is not the first time that this immigration judge has made similar mistakes. Well, not only that, but that the police sometimes engage in that form of brutality or look the other way. That's correct, Your Honor, and that's a critical part of the inquiry. Isn't that the critical part? Yes, it is, Your Honor. That is a critical part of the inquiry. And at AR-424, it is very specific in the 2013 State Department report that the police often not only fail to intervene in these acts against gay Jamaican men, but that they also participate in those acts themselves. This is not the first time this immigration judge has made similar mistakes. As this panel is well aware, in Walker v. Lynch, decided just last month, this same immigration judge made a mistake with regard to country conditions. The immigration judge indicated that there was insufficient evidence that the Jamaican government indirectly condones the torture of gay men, and this court remanded, indicating that the immigration judge had overlooked key country conditions evidence, and to Your Honor's point, that evidence was the police acquiescence in and torture themselves of gay men. The immigration judge also committed a second legal error in this case by requiring Mr. Brown to demonstrate that the Jamaican government would acquiesce in the torture of Mr. Brown in particular. Again, this is not something that's required, and the Ninth Circuit has addressed this exact issue in Broomfield v. McCasey. In that court, the Ninth Circuit held that a petitioner is, quote, not required to show that the government would torture him. He could satisfy his burden by showing that the government acquiesces in the torture of gay men. That's exactly the same legal error that was made in this case, and we would ask this court to follow Broomfield v. McCasey and remand for correction of that error. The immigration judge in this case also committed a number of different errors with regard to the fairness of the proceedings. First, the immigration judge failed to develop the record with regard to Mr. Brown's past torture. Mr. Brown credibly testified to the fact that he was raped when he was 11 years old in Jamaica. The immigration judge simply found that he was a crime victim, and this incident happened once. But the immigration judge failed to ask any follow-up questions when Mr. Brown testified to the fact that he was raped to determine whether or not the rape was based on discrimination. Under 1208.18, all of these arguments were made to the BIA. The failure to develop the record argument was made to the BIA, Your Honor. There are some additional arguments, the bias arguments, which we have brought forth before this court as well, which are additional examples of the way that the hearing was not fair. With regard to those arguments that were not brought before the BIA, those are unexhausted. Those arguments and those examples of how the hearing was not fair were not brought before the BIA. However, those are inextricably linked to the argument that there was a failure to develop the record, and this court has jurisdiction to hear those issues. Under 1252.d.1, there is no statutorily mandated issue exhaustion requirement, and this court often hears issues that may not have been exhausted where there would be a miscarriage of justice, which is exactly what would happen in this case, given that Mr. Brown is at risk of being returned to Jamaica where he could potentially be tortured. What about the issue of his concealment in Jamaica of his bisexuality or bisexuality? Yes, Your Honor. That is something that is not required under the law, and Allie V. McKay sees this court specifically recognize that an individual does not have to stay closeted. He should be free to express his personal being, which in this case is Mr. Brown's sexuality and his sexual orientation, and therefore when the immigration judge indicated that Mr. Brown could potentially avoid torture in Jamaica by hiding his sexuality, that's something this court does not require. Isn't there an issue also of misapplication of the evidence in the sense that an inference was drawn against him with respect to his exposure to likelihood of torture based on the fact that he had not been tortured in the past? Yes, Your Honor. Which overlooked the evidence that he had concealed his sexuality in order to protect himself. That's exactly right, Your Honor. The immigration judge totally overlooked the fact that Mr. Brown had testified at AR-333 that he was not open in public about his sexual orientation while he was in Jamaica, and then the immigration judge drew that adverse inference that Your Honor references and simply indicated that that could be one of the reasons that Mr. Brown was not previously tortured. Again, in Allie V. McKay's view, this court reversed where the immigration judge denied protection based on doubts that the petitioner would make his homosexuality obvious in public or draw the attention of authorities or police. Did he raise that with the BIA, and if so, what did they do? Yes, Your Honor. That issue was raised before the BIA as part of the mischaracterization of the record argument, and the BIA did not comment on that portion of the record, so we have no evidence from the BIA on that point, just the immigration judge's mistake. With regard to the failure to develop the record, I'd also like to point to some of the ways that the immigration judge was in fact biased in this case. He allowed the government to go on a fishing expedition and essentially ask a number of offensive questions. He allowed the government to ask if Mr. Brown had a penis, if he had testicles, if he prefers effeminate men when he's with men, how he's going to perform as a gay man in Jamaica, none of which have any relevance to this case. What is it that you want besides a grant of the petition and remand? That is what we're asking for, Your Honor, and we would ask that this court remand to a different immigration judge given the bias before Judge Strauss in this case. Thank you. Thank you. Ms. Jarwan. Good morning again. Ms. Jarwan, representing the U.S. Attorney General in this matter. First, in regards to Mr. Brown's first petition for review, because Mr. Brown was convicted of controlled substance violations, under Ortiz, this court lacks jurisdiction to review issues unless they are constitutional issues. You mean Ortiz-Frank? Correct. Unless they are issues of constitutional issues or questions of law. Well, hasn't she raised a number of legal questions? Turning to one of the legal questions that counsel raised, in regards to the agents... The answer, I guess, is yes, based on that. Certain of her issues that she raised are constitutional issues, but the majority are fact-based challenges. They don't have to be constitutional issues. They just have to be issues of law. One or the other. That's correct. And in this case, in regards to the due process issue regarding the immigration judge's failure to develop the record, the immigration judge asked about seven pages' worth of transcript about the rape incident and in his decision also referred to that incident. The immigration judge is not required to ask hours' worth of details about a specific incident, and certainly the immigration judge did not lay out in his decision that he was missing any information or that he needed more information in order to make his findings and fact and conclusions. If that were the case, that would be a different question, but the record does not reflect that here. In regards to the agency's CAT decision, the agency did not make an error of law. Council is cloaking that argument as a question of law, but, in fact, the agency cited to the proper regulation. The regulation states that there are several factors that an immigration judge must consider, non-exhaustive factors, including past torture, including violations of human rights, including other relevant information of country conditions, but at the end of the day, the specific applicant for CAT also, his circumstances need to be considered, so it is a holistic approach that the immigration judge took in his decision. Do you agree that it would be a legal question if, for example, in reviewing the record, we were left with the distinct impression that the immigration judge had misapplied those factors in some way? If there was an error in the way that the judge characterized the law or if there was an unambiguous mischaracterization of the facts, certainly that would be a question of law, but in this case, the immigration judge did not mischaracterize any facts. He did not present the wrong legal standard for CAT. He simply weighed the evidence, and in his— What is it that you can see as a legal question that's raised in this case? If the argument is that there was a due process issue or a bias issue, perhaps that that would be a constitutional question, but I don't believe, and I submit that this is not a colorable claim. The IJ in no—the immigration judge in no way showed any bias in his findings of fact and conclusions of law. In regards to the offensive— What about his questions? I apologize? What about his questions? He didn't actually present any questions to the petitioner that counsel characterized as offensive. DHS counsel did ask questions. Regardless of whether those questions were offensive or not offensive, the immigration judge actually never relied on those questions in making his findings of fact and conclusions of law. He never cited to them. They did not bias him in any way according to the record. So those—that issue, even if it is a question of law, there is no colorable aspect. If a judge, by his questions, exhibits bias, does one have—is it necessary to find fault in the proceeding that the judge then has relied on the answers to the questions in his fact-finding? I mean, if you have a biased judge, a biased judge is something that's not acceptable. Well, first, I'm not conceding that he was biased in this hearing, and second, it would have to depend on the circumstances of every case. In this case, the record does not reflect a bias. Why did the questions the judge asked not show bias? These were not questions asked by the judge. The DHS counsel asked questions which look as if they are going to the sexual orientation of this individual. And certainly, if your entire claim of fear of torture rests on sexual orientation, then DHS counsel has to ask in a credibility determination whether or not you are of that sexual orientation. So the questions were seeking to impeach— I believe the— —of sexual orientation. In every immigration case, credibility is an issue, and certainly DHS counsel has leeway to ask questions regarding the sexual orientation of an individual and whether they actually are part of that sexual orientation. So what about the issue of the IJ's reliance on the fact that the petitioner had not been tortured in his past residency in Jamaica, overlooking the petitioner's testimony that he had concealed it in order to protect himself? Well, in regards to the administrative record in this case, first of all, the rape, the immigration judge determined, was not past torture. The immigration judge found that it was an isolated, horrific act. It was a young 11-year-old taken advantage of by a neighboring farmer when Mr. Brown went to go get water in that neighboring area. That incident, based on the IJ's findings of fact and conclusion, is an isolated incident, and that individual never harmed him again in the 15 or so years after it occurred, while Mr. Brown was still living in Jamaica. In regards to other harm that may have befallen Mr. Brown, he was specifically asked whether he had any trouble either in Clarendon, his hometown, or in Kingston. And he specifically said on the record, page 325, he had no trouble with the police in Clarendon. And again on page 331, he had no trouble with the police, gangs, people in the community in Kingston. I don't think you're answering my question. My question is, why isn't it an error of law that's cognizable, his argument that the immigration judge drew an inference against him with respect to his exposure to the likelihood of torture in the future, that he hadn't been tortured in his past residency in Kingston, in Jamaica, overlooking the testimony by the petitioner that he concealed his sexual orientation in order to protect himself from the likelihood of torture? I would say that the immigration judge looked at the evidence and weighed it, and the sufficiency of that evidence did not lead to a more likely than not standard, which is a high standard of more than 50%. The immigration judge found that this individual was in gay relationships in Jamaica for three years during his time in Jamaica and was not harmed, and that he certainly, albeit not in open quote-unquote relationships, but the immigration judge also looked at his relationships in the United States, and he also was not as open in the United States as well. And the immigration judge was able and allowed to look at that evidence and determine that this is not an individual who necessarily is more likely than not to be tortured because he has not been open in Jamaica or in the United States. In fact, on the last page of the record, he states that he was on the verge of being open in the United States, on record 398. So the immigration judge did not find past torture, and also there's no legal error if based on that evidence he weighs the evidence as a whole and determines there's no likelihood of future torture. That is within the IJ's discretion to weigh the facts, and in this case the immigration judge found the facts overall were speculative. What about the argument of your adversary that given the circumstances in Jamaica, both culturally and by the government, that that suggests a likelihood that he would be subject to, well, torture is a strong word, but it's a shorthand for other things. The immigration judge found that based on the country conditions reports that it did not meet the standard of more likely than not. If we were to say that every gay Jamaican who presented that same report did not meet the standard if you require direct evidence and if you require, as your adversary says, a showing that this person will be tortured, I think that the Jamaica report from 2013 makes it pretty clear that members of the LGBT community are beaten up. Do you have any quibbles with your adversary's characterization of the report? To answer both of your Honor's questions, Jamaica certainly is a homophobic country based on the country conditions reports, but that's not the standard here. The standard is this applicant who is applying for deferral of removal, this particular applicant, would he more likely than not be tortured? And also, looking at the country conditions as a whole, would he more likely than not be tortured? The immigration judge did not stop his analysis at the singled-out analysis. He looked at all the factors overall, so unlike counsel's characterization of the immigration judge's decision, he did not find only one aspect of likelihood of torture and not the other. He looked holistically at this particular applicant's circumstances, the past torture or the lack thereof, as well as the country conditions. Were we to allow every gay Jamaican— Was there any part of the report that indicated that there was some part of Jamaica to which Mr. Brown could go to avoid the homophobic culture that's described in the report and to avoid the likelihood of being brutalized as a result of his sexual orientation? Well, Jamaica is a small country, and the report, while it does show a homophobic nature in the country, it also shows instances in which the government is trying to challenge those unfortunate viewpoints.  for the plight of the LGBT community and work to prevent and resolve instances of abuse. Furthermore, there's a trial that occurred in 2005 of six suspects accused of robbery and murder of a prominent gay rights activist. In 2011, the PNP leader, a political leader, said that she would try and examine the anti-buggery law, which is the anti-homosexuality law that is not widely enforced in Jamaica. Is that still on the books in Jamaica? It is still on the books, but the country conditions report says it is not widely enforced. Again, the immigration judge, in his opinion, it's his role to weigh that evidence and to determine as a whole whether it is more likely than not, whether the evidence meets that standard. And it is in his mind, it was in his mind, speculative overall based on this particular individual as an applicant for CAT as well as holistically all the country conditions report and testimony. And I believe my time is up or close to done. In regards to the... It's technically done. It's technically done. Well, thank you, Your Honours. Your Honour, just a few brief points. With regard to Your Honours' questions about if there's any part of the country to which Mr. Brown could relocate, he cannot, in fact, relocate to any part of the country where he would not be harmed. As the 2013 State Department report indicates, while the 10-year anti-buggery law, excuse me, buggery law may not be widely enforced, the law putting gay Jamaican men in jail for up to two years for exhibiting any sort of same-sexual intimacy in public or in private is still very much enforced. With regard to the bias of the immigration judge, opposing counsel pointed out that the government asked those questions. However, it's incumbent upon the immigration judge to conduct the hearing in an unbiased fashion. He must be a neutral arbitrator, and he was not a neutral arbitrator when he allowed the government to go on that fishing expedition and ask extremely offensive and irrelevant cross-examination questions. The USCIS puts out guidelines for asylum officers about exactly how to go about making a credibility determination, and those guidelines counsel specifically against asking questions about things like an individual's genitals as well as how an individual would perform in a particular sexual setting, and those are the types of questions that the government asked in this case. Finally, Your Honors asked about the rape incident, and opposing counsel pointed out that there were many pages where the rape was discussed, but it's not about the number of pages about where the rape was discussed. It's about the content of those questions, and the immigration judge never asked the follow-up question to develop the nexus between the rape and the type of torture that is identified in 1208.18A1, which is torture based on any type of discrimination. Therefore, at a minimum, the immigration judge should have asked the follow-up question to determine whether or not the rape was based on discrimination, in this case, most likely Mr. Brown's sexual orientation. Ms. Friedman, there are two petitions for review here. Is that correct? That's correct, Your Honor. One relates to the cat claim and the denial of deferral for removal under the convention. Is that right? That's correct. And the other is the motion to reopen? That's correct, and those have been consolidated, Your Honor. If we were to grant the petition relating to the cat claim, which has been the primary focus of the oral argument, why should we deny the motion to reopen related petition as moved? Is there anything different, really, substantively, in terms of what you want? Your Honor, that petition, we did submit additional country conditions evidence, which bolsters the 2013 State Department report. Would you not be able, if this were remanded on the cat claim, to introduce those reports? We could do that if it was sent back to the immigration judge and we could develop the record in that way. That would be sufficient, Your Honor. Okay. Thank you. Thank you. Ms. Weber, just your brief discussion, you were directing me to where you discussed the terms of the Juneteenth statute that you say would be subjected until two years in prison in the form of a homosexual tendency, is that correct? Yes, Your Honor, that's in the 2013 country conditions report, and I can find a site if Your Honor would like. That's in the administrative record? Yes, Your Honor. It's in the State Department report? That's correct. 425, is that right? Thank you very much. We'll reserve the decision.